## APPEAL OF MAX SCHOTT.

Docket No. 4895.   Decided October 13, 1926.

1. Where one Commissioner of Internal Revenue, with full knowledge of the facts, held certain income to be taxable in 1916 and collected a tax thereon, and his successor, on the same facts and after the statute of limitations on a refund for 1916 had expired, held sr·h income to be taxable in 1917 and sought to collect tax thereon, *held*, that the decision of the first Commissioner, even if it has no greater influence, should be considered as *prima facie* correct by his successor in office.

2. *Held*, upon the evidence in the instant appeal, that the ruling of the first Commissioner should not be disturbed.

3. *Quaere:* Whether in such circumstances and while the Government retains the tax paid for 1916, it is estopped to collect a tax upon the same amount as income for 1917?

4. *Quaere:* Whether the decision of one Commissioner, with full knowledge of the facts, is binding upon his successor in office in the absence of fraud or mistake in mathematical calculation?

*Arthur B. Hyman, Esq.,* for the petitioner.
*Ward Loveless, Esq.,* for the Commissioner.
*Joseph B. Cotton, Esq., Samuel Brenner, Esq.,* and *Roy F. Wrigley, Esq.,* as *amici curiae.*

This is an appeal from the determination by the Commissioner of deficiencies of $18,612.36 for 1917 and $35,760.16 for 1920, and an overassessment for 1919 of $24,753.57, which arise principally from the action of the Commissioner in determining that amounts reported by the taxpayer as income for 1916, 1918, and 1919 are income for the years 1917, 1919 and 1920, respectively.   Substantially all of the facts were stipulated.

### FINDINGS OF FACT.

The taxpayer is a resident of Santa Barbara, Calif.   During the years 1916 to 1919, both inclusive, and for several years prior thereto, the taxpayer was the western manager of The American Metal Co., Ltd., hereinafter called the Company.

The Company was and is a corporation organized under the laws of the State of New York by the late Jacob Langeloth and Berthold Hochschild.   It was incorporated in 1887 and has ever since that time had its principal office in the City of New York.   At the time of its incorporation a contract was entered into between Langeloth, Hochschild and the Company whereby Langeloth and Hochschild drew nominal specified sums yearly and were to be paid for their services in building up the business in the following manner: After paying or setting aside 6 per cent dividends on the outstanding stock

of the Company, a sum not exceeding 40 per cent of the remaining net profits was to be paid to Langeloth and Hochschild as additional compensation for services, and the balance was to be applicable for dividends or other company purposes. These payments for services were and are called tantiemes. This contract continued in force from 1887 through the years in question in this appeal.

The Company from its inception has always carried on the business of buying and selling ores, concentrates, and metals, and has been a large dealer therein. It has also had subsidiary companies and carried on through such companies mining and treatment operations, both in the United States and foreign countries. Its business has been conducted all over the world and its officers and managers have been the men who have enlarged the business and have been responsible for and contributed to its financial success. These officers and managers knew in a general way from month to month approximately what the net profits of the Company were for the preceding month, but its actual net profits were never ascertained until after the close of each fiscal year. When so ascertained for the year, such net profits were set up on the books of the Company, the tantieme part thereof charged to operating expenses for the fiscal year and simultaneously credited to the tantieme recipients in the percentages to which they were entitled upon the books of the Company, with interest allowed either from the end of the fiscal year or from the time when said accounts were actually written up on the books.

As the business in the earlier years grew and was extended, Langeloth and Hochschild permitted other officers, managers, and employees to participate with them in such tantiemes. During the life of Langeloth, who died in August, 1914, he and Hochschild designated each year what persons should participate and the percentages in which they should participate in these yearly tantiemes. The men thus permitted to participate were those whose work and efforts were in part responsible for and who contributed to the financial success of the business. Each participant knew during any given period that he was a participant in the tantiemes and the percentage of such net profits over and above the dividends to which he was entitled for such period. These tantieme recipients during the years in controversy received nominal salaries and relied upon the successful operation of the Company and the payment of these tantiemes for compensation for their services to the Company.

Prior to 1921 the Company had very few stockholders—not exceeding 34 in number—and these were for the most part the officers, managers, and employees and their relatives and associates in the United States and abroad.

During all the years in which the Company has been in existence, including the years in controversy, the tantieme recipients have been

in entire control of the management of the corporation and they constituted its board of directors and, with their relatives and associates, have been in control of the stock of the Company and have directed its business and dominated its policies.

During the years 1916 to 1919, both inclusive, the taxpayer had these tantieme contracts of employment with the Company pursuant to which contracts the taxpayer was entitled to receive and did receive during said years a percentage of the net profits of the Company's business for each fiscal year. The contracts in question were made pursuant to a provision of the charter of the corporation which authorized the payment to its officers, directors, and employees, as compensation for services rendered, of a certain percentage of the net profits remaining after the payment of 6 per cent dividend upon the outstanding capital stock. This method of payment to officers, directors and employees of the Company in lieu of specific salaries had been in vogue, as aforesaid, since the year 1887.

From its incorporation to June 20, 1916, the fiscal year of the Company ended on June 30 of each year.

As an integral part of the system of accounting adopted and in use during the years in question by the Company and since the inception of the Company, it kept accounts for the individual tantieme recipients, including the above-named taxpayer, in which were credited the tantiemes to which they were entitled and in which were entered all other sums to which they were entitled from the Company or which they deposited with the Company to their credit. The Company acted as banker for said tantieme recipients, including the taxpayer, selling stocks, bonds and other properties for them and crediting their accounts with the proceeds thereof, and also purchasing stocks, bonds and other properties for them and debiting their accounts with the amount of such purchases when received. These accounts were kept in the regular books of account of the Company. The usual practice was to allow interest to the tantieme recipients upon their credit balances.

The tantieme recipients controlling the Company agreed, in the latter part of 1916, to change its fiscal year to a calendar year basis, such change to take effect from July 1, 1916. Instructions were given to the accounting department accordingly. A resolution of the board making the change was passed April 6, 1917.

The books of the Company were thereupon in April, 1917, closed as of December 31, 1916, and the tantiemes to which the tantieme recipients were entitled for the last six months of 1916 were determined on or about April 6, 1917, and the same were then credited to the account of said tantieme recipients upon the books of the Company as of December 31, 1916.

Upon inquiry of the then collector of internal revenue for the second district of New York, the Company was instructed by him to accrue the same upon its books to December 31, 1916, and to treat the same as additional operating expense for the calendar year 1916. The corporation acted accordingly and filed an amended return for said calendar year on or about April 12, 1917, setting up the amount of said tantiemes accrued from June 30, 1916, to December 31, 1916, as an additional operating expense for the said calendar year 1916. Said amended return was with full knowledge of the facts duly accepted by the Government, duly audited, and the amount of said tantiemes finally allowed as a proper item of expense for the year in question.

The said collector of internal revenue for the second district of New York also advised that said tantieme recipients should amend their individual returns for the year 1916 by including therein the said tantiemes for the last six months of 1916 entered to their credit on the books of the Company as of December 31, 1916.

In April, 1917, the Company advised the taxpayer that it had changed its fiscal year to the calendar year, had closed its books at December 31, 1916, and had credited him with tantiemes for the last six months of 1916, of $177,642.05, in addition to those already credited to him upon its books for the year ended June 30, 1916, and that, under a ruling made by the collector of internal revenue for the second district of New York, all the tantieme recipients, including the taxpayer, must make amended returns of income for the calendar year 1916 by adding the said tantiemes so credited to them for the last six months of the calendar year 1916.

After the receipt of such notice from the Company, the taxpayer consulted the collector of internal revenue for the district of Colorado, where he then resided, giving him all the facts and the ruling of the collector of internal revenue for the second district of New York, and the said collector of internal revenue for the district of Colorado made the same ruling, to wit, that the taxpayer should amend his return for 1916 by adding to the income reported on his original return the tantiemes credited to him by the Company for the last six months of 1916.

The taxpayer duly filed an amended return of income for the year 1916 in accordance with said ruling in the office of the collector of internal revenue for the district of Colorado, including in said amended return the tantieme credited to him by the Company for the last six months of 1916 in addition to the tantiemes reported by him and credited to him upon the books of the Company at June 30, 1916.

To the said amended return the taxpayer attached a copy of a letter reading as follows:

APRIL 11, 1917.

Honorable WILLIAM H. EDWARDS,
*Collector of Internal Revenue,*
*Custom House Building, New York.*

DEAR SIR:

In accordance with your request, I submit herewith the substance of the income tax question discussed with you at our conference yesterday. The facts involved are as follows:

Certain officers and directors of the American Metal Company, Limited, receive as compensation for their services nominal salaries, plus a percentage of the profits of the business. For many years, the fiscal year of the corporation has ended on June 30th. The annual meeting was held in October, at which time the share of profits belonging to each of the officers out of the Company's profits for the fiscal year ended the preceding June 30th was paid over to them. On February 28th, 1917, these individuals filed personal tax returns including their income derived from the profits of the business for the corporate fiscal year from June 30, 1915, to June 30, 1916, as they had done the previous February for profits earned from June 30, 1914, to June 30, 1915.

At a meeting held on April 6th of this year, the Board of Directors decided to change the Company's fiscal year from June 30th to December 31st, so that it would coincide with the calendar year and thereby eliminate the many perplexities arising out of the conflict of its accounting system with the prescribed tax returns. The profits of the corporation were therefore figured for the six months from July 1st to December 31st, 1916, and the Board ordered paid over to the officers their respective percentage of these profits, instead of holding them until the end of its new fiscal year ending December 31st, 1917.

The question immediately arose whether these profits so received by the individuals should be included in their personal returns of income for the year 1916 and, if so, whether the individuals should make a supplemental return or amend the returns already filed on February 28, 1917.

Pursuant to your suggestion, I discussed this question with Mr. Stinson and Mr. Fath of your office, and Mr. Fath expressed the opinion that as these profits were entirely earned in the last half of the year 1916 the individual returns should be amended so as to include them in the personal income reports already filed for that year. The only case I discussed with Mr. Fath was that of Mr. C. M. Loeb. However, other officers and directors of the American Metal Company, Limited, who are similarly situated and who, under this ruling, should amend their personal tax returns are the following.

| | | |
|---|---|---|
| B. Hochschild | S. Adler | Henry Bruere |
| T. Sternfeld | H. K. Hochschild | Julian B. Beaty |
| Otto Sussman | H. V. Putzel | H. Bernstorff |
| Julius Loeb | S. Roos | |
| M. Schott | M. Roos | |

Mr. Schott lives in Denver; Mr. S. Roos lives in St. Louis, and their amended reports will therefore be filed in these districts. My own report is filed in the third district, where I reside. The amended reports for all of the other gentlemen are transmitted herewith, with the exception of Mr. Julius Loeb, who is out of the city. He is expected to return next week, at which time he will file an amended report.

The American Metal Company, Limited, has already filed a statement showing the 1% of income withheld at the source, pursuant to the provisions of the law.

The foregoing action will necessitate its filing a supplemental statement of income withheld at the source to cover 1% additional on the above distribution of profits for the last half of 1916. This supplemental report is likewise transmitted herewith.

It also becomes necessary for the corporation to amend its income return for the year 1916, inasmuch as that return includes all profits up to December 31, 1916, but no deductions were made for the sums now paid to the above named individuals as compensation for their services for the July/December period. These payments would, in the usual course, be deducted from its return for 1917, but as the individuals are receiving these payments as of 1916 and paying personal income tax thereon, it is evident that they should be deducted from the corporate return. An amended return for the corporation also is therefore transmitted herewith.

I trust that the foregoing statement is sufficiently explicit, but if any additional facts are desired by the Department, they will be gladly furnished upon request.

> Very truly yours,
>
> JULIAN B. BEATY.

Said amended return, with the copy of the letter attached, was duly received by the collector of internal revenue at Denver, Colo., and by him transmitted to Washington for audit and approval.

Thereafter, the Commissioner caused a field examination to be made of the books and accounts of the taxpayer in connection with the said amended return. The report of the field examiner was duly examined by the Commissioner in connection with said amended return, the same was duly audited by him, and he thereupon addressed to the taxpayer a letter dated July 1, 1918, which was duly received by the taxpayer, the material portions of which read as follows:

An investigation of your income tax liability for 1913 to 1916, inclusive, based on report of Revenue Agent Drakeford, dated May 15, 1918, indicates that there is due from you a further tax of $31.31 for 1916.

Assessment of this amount will be made on the next list. The Collector of Internal Revenue of your district will notify you as to the time and manner of making payment of this tax.

Income has been increased to include profits from the sale of stocks amounting to $652.06 and from interest on notes increased $227.99. Dividends have been decreased $390.00. Deduction for losses on the sale of stock has been increased $276.22.

*       *       *       *       *       *       *

The investigation also discloses that you overpaid by $91.22, the amount of tax due on your 1915 income. If you will file in the office of the Collector of your district a claim for the refund of this amount on the enclosed Form 46, the Department will give due consideration thereto.

The taxpayer duly paid the additional tax of $31.31 therein found by the Commissioner to be due and received the refund therein allowed.

For the calendar years 1917 to 1919, both inclusive, the Company, on the closing of its books as of December 31, credited to the tax-

payer the tantiemes to which he was entitled as compensation for services, as follows:

1917_____ $131, 753. 12
1918_____   19, 022. 66
1919_____   83, 462. 73

The taxpayer duly filed his income-tax returns for each of the years mentioned, including therein for each of said years the amount so credited to him on the books of the Company as of December 31 in each of said years as compensation for the year for which it was so credited, which was also the year in which it was earned.

Thereafter, the said reports were duly transmitted by the collector for the district in which they were filed to the Commissioner and were duly received by him, and thereafter he caused a field examination to be made of the books and accounts of the said taxpayer, covering the years 1917, 1918 and 1919, and said report of the field examiner was duly transmitted to the said Commissioner and by him audited in connection with the said income-tax returns.

The said income-tax returns and the report of the field examiner made in connection therewith were duly approved by the said Commissioner, with exceptions not material to this appeal, and upon said examination and audit said Commissioner found a net overpayment of tax for the years in question in the sum of $239.07, of which he advised taxpayer under date of February 2, 1922, and which was thereafter duly refunded to the taxpayer. At that time David H. Blair was, and continues to the present time to be, Commissioner of Internal Revenue.

Thereafter, and on or about the 20th day of March, 1923, the Commissioner assessed an additional income tax for the year 1917 against the taxpayer in the sum of $94,265.81. The return of the taxpayer for the year 1917 was filed with the collector on March 28, 1918. The additional tax so assessed resulted almost in its entirety from the inclusion in income in the year 1917 of the tantiemes credited to the taxpayer by the Company for the last six months of 1916, that is to say, the Commissioner added to the tantiemes credited to the taxpayer by the Company in the year 1917 and reported by him as income for 1917, the sum of $177,642.05, the tantiemes credited by the Company to the taxpayer as of December 31, 1916, which had been reported by said taxpayer as income for 1916 in his said amended return and upon which the tax had been paid, as hereinbefore set forth. At the time of making this adjustment, and as a result thereof, an overassessment for 1916 resulted in the sum of $19,540.62, the amount of tax previously paid by the taxpayer upon the inclusion of said amount of tantiemes in his income-tax return for 1916. This overassessment of $19,540.62 the

Commissioner declined and still declines to credit, upon the ground that it is barred from allowance either as a credit or refund by the statute of limitations.

Said additional assessment for 1917 having been made without compliance with section 250(d) of the Revenue Act of 1921, an application to abate the same was duly filed by the taxpayer, and various proceedings were had upon said claim for abatement, resulting in a determination by the Commissioner in May, 1925, which abated the tax to the extent of $75,653.45, leaving assessed and unabated a tax for 1917 of $18,612.36. It is from a letter notifying taxpayer of this determination that the appeal is taken.

This result, as well as the alleged deficiency in tax for the year 1920 in the sum of $35,760.16 and the overassessment for 1919 of $24,753.57 shown in the letters appealed from, arises from the action of the Commissioner in excluding from the return of the taxpayer the tantiemes reported therein for the year for which they were credited to him upon the books of the Company and including them in the year immediately following.

Taxpayer kept an open account with the Company upon which he received credit for the tantiemes due him, dividends from stock of the Company, interest on certificates of indebtedness, sums resulting from the sale of property by the Company in his behalf, and sums deposited by him from time to time with the said Company, and was debited with payments made to him or on his behalf for the purchase of stocks, bonds, and liabilities incurred. Dividends and interest on securities of the taxpayer held by the Company and sums received by the Company upon the sale of property of the taxpayer were credited to the taxpayer in said account as and when received by the Company. Dividends and interest on stock and securities of the Company owned by the taxpayer were credited in said account when due and payable. Practically all taxpayer's transactions were carried on through his said account with the Company. Upon his credit balances interest at various rates was allowed to him by the Company.

The taxpayer in the years 1916 to 1920, both inclusive, at all times kept a book or books of account which were duly examined by the representatives of the Commissioner, as hereinbefore set forth.

Said book or books of account exactly reflected the taxpayer's account with the Company as it appeared upon the books of the Company, that is to say, whatever income was carried to his credit on the books of the Company was likewise entered as income in the taxpayer's books, when the taxpayer was advised of such credit, although said amounts were neither paid to the taxpayer nor withdrawn by him. Upon this book, under the account with the Company, the taxpayer, under date of April 12, 1917, made the

following entry: Tantieme for 6/30–12/31/1916 due 12/31/1916—
$177,642.05.

Taxpayer entered upon this book interest due him as it became
due and payable, whether or not collected, and entered interest pay-
able by him in the same manner. Taxes were entered in the year
in which they became due and payable. Taxpayer's income-tax
returns for the years in question were made upon the same basis on
which this book was kept.

### OPINION.

PHILLIPS: The Commissioner moves to dismiss the proceeding as
to 1917 and 1919 upon the ground that as to those years the Board is
without jurisdiction. The motion is denied as to 1917, *Appeal of*
*J. S. Hoskins Lumber Co.*, 3 B. T. A. 846; Revenue Act of 1926, sec.
283 (f); and is granted as to 1919, Revenue Act of 1926, sec. 274(g);
*Appeal of R. P. Hazzard Co.*, 4 B. T. A. 150; *Appeal of Cornelius*
*Cotton Mills*, 4 B. T. A. 255.

The facts, most of which were stipulated, are set out in full above,
and will not be repeated here. Counsel for petitioner cites a number
of decisions of the courts and rulings of the Attorney General to the
effect that public officers can not open and reexamine cases decided by
their predecessors except for fraud, mistake in matters of fact arising
from errors in calculation, or newly discovered material evidence,
and contends that the decision made by Commissioner Roper, with
full knowledge of all the material facts, that tantiemes earned in
1916 were 1916 income to the taxpayer, is binding upon his successor.
As further authority for his position, counsel cites section 1007 of the
Revenue Act of 1924, which reads:

In the absence of fraud or mistake in mathematical calculation, the findings
of facts in and the decision of the Commissioner upon (or in case the Secre-
tary is authorized to approve the same, then after such approval) the merits of
any claim presented under or authorized by the internal-revenue laws shall not,
except as provided in section 900, be subject to review by any other administra-
tive or accounting officer, employee, or agent of the United States.

It is further contended that the authorized agents of the Govern-
ment having, with knowledge of all material facts, ruled that such
amount was income for 1916, and having collected and retained a tax
thereon, the Government is, so long as it retains the tax so collected
and refuses to refund or otherwise return the same to the taxpayer,
estopped to collect a further tax by now claiming that such amount
was not income in 1916, but was income in 1917.

Both contentions present interesting questions, the decision of
which would deserve serious consideration, but, as we view the instant
appeal, it becomes unnecessary to discuss these contentions, other
than to state them.

It would seem that in circumstances such as we have here the decision of a Commissioner should, even if it has no greater influence, be considered as *prima facie* correct by his successor in office. In the courts and before this Board, the findings and decision of the Commissioner are presumed to be correct until the contrary is shown, and the decision of one Commissioner should be entitled to at least the same weight with his successor in office. An examination of the record leads us to believe that the first ruling was correct and convinces us that it should not be disturbed.

Passing without discussion the contention that because the tantieme recipients were in control of the Company there was constructive receipt by them of these tantiemes, we find that this taxpayer kept an account book in which he recorded his various transactions. Included in this are accounts and notes receivable and payable, upon which interest is annually accrued, whether or not paid or payable. Taxes were entered in the year in which payable. Sums credited to his account by his employer were entered as of the date credited, whether paid or not. While there are departures from a strict accrual system of accounting, it is manifest that the primary purpose of the taxpayer's accounts is to reflect income and expense upon an accrual basis, and the returns of the taxpayer were uniformly made upon that basis. In such circumstances it is immaterial that some items may not have been treated upon a strictly accrual basis. *Appeal of Bartles-Scott Oil Co.*, 2 B. T. A. 16; *Appeal of John F. Cook*, 4 B. T. A. 916. In such cases the net income will be adjusted to correctly reflect it upon the accrual basis.

It seems evident that these tantiemes were accruable for the year in which earned. The amount which each person was to receive was a mere matter of computation, being a percentage of the profits for the year. When such amounts are definitely ascertainable as of the close of the year, the fact that the computation and entry on the books is made after the close of the year is immaterial. In such a case the amounts are properly to be accrued as an expense by the corporation for the year in which the services were rendered. The Commissioner has so treated the amounts so far as the corporation is concerned. Upon the same facts, the amounts are to be accrued as income for the same year by a taxpayer upon an accrual basis. The deficiencies, so far as they arise from the errors alleged in the petition, are disallowed.

*Orders of redetermination of the tax liability for 1917 and 1920 will be entered on 10 days' notice, under Rule 50.*